# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **Case No. 8:15-CR-193-T-35TGW**

**RUBEN DARIO RIVADENEIRA-CHASING**
_____/

### SENTENCING MEMORANDUM IN SUPPORT OF
### A MINOR ROLE REDUCTION AND A
### DOWNWARD VARIANCE PURSUANT TO 18 U.S.C. §3553(a)

COMES NOW, the Defendant, RUBEN DARIO RIVADENEIRA-CHASING, by and through undersigned counsel and pursuant to 18 U.S.C. §3553(a), and hereby files this sentencing memorandum in support of his previously-lodged minor role objection and in further support of a reasonable sentence which is not greater than necessary to accomplish the purposes of sentencing enumerated in 18 U.S.C. §3553(a)(2).  As grounds in support thereof, Mr. Rivadeneira-Chasing shows as follows:

### FACTUAL AND PROCEDURAL HISTORY

Mr. Rivadeneira-Chasing is an Ecuadorian national who was born on November 4, 1981, in Muisne, Esmeraldas, Ecuador. PSR ¶37.  He is one of ten children born to Hector Miguel Rivadeneira and Aura Erminda Chasing. *Id*. Mr. Rivadeneira-Chasing and his nine siblings were raised under extremely

poor conditions which resulted in a "very hard" childhood. *Id*.  If being born into poverty with 9 siblings was not hard enough, things got even worse for Mr. Rivadeneira-Chasing when he was 7 years old and his father died. *Id*.  With the loss of their father, who was their sole financial support, the Rivadeneira-Chasing family became homeless in a very short period of time. *Id.*  In order to survive and to ensure that the family did not have to live on the streets of Ecuador, Mr. Rivadeneira-Chasing's mother was forced to seek out-of-town employment opportunities. *Id*.  Ultimately, his mother was able to find meager employment washing clothes. *Id*.  The little money his mother earned was sent back to her children to help provide for their basic necessities. *Id*.

At the age of 12 and while still in the third grade, Mr. Rivadeneira-Chasing was forced to drop out of school to seek employment and supplement the family's household income. PSR ¶¶64, 68.  Since the age of 12, Mr. Rivadeneira-Chasing has been a fisherman, typically fishing with a net to catch dorado, marlin, and tuna. PSR ¶68.  Depending on the success of the month's catch, Mr. Rivadeneira-Chasing's income would fluctuate; but, even at its most profitable, Mr. Rivadeneira-Chasing would make no more than $350.00 a month. PSR ¶68.

As an adult living on this meager monthly fishing income, Mr. Rivadeneira-Chasing has struggled to support his 8 minor children. PSR ¶¶50-

2

53, 68.  Today, Mr. Rivadeneira-Chasing has four minor children from previous relationships who are ages 13, 12, 9, and 8; he also currently financially supports his present common-law wife's four minor children who are ages 16, 12 and 8, the 8-year-olds being twins. PSR ¶¶50-53.  In light of his present incarceration, Mr. Rivadeneira-Chasing is concerned that his childrens' mothers are not currently able to financially support their families in his absence and that his children will be forced to drop out of school and start working to help support themselves, as he had to do when he was a child. PSR ¶50, 53.

Prior to his involvement in the present case, the fishing season was "very bad" during the past winter, which exacerbated Mr. Rivadeneira-Chasing's financial struggles. PSR ¶68.  It was during these difficult financial times that Mr. Rivadeneira-Chasing learned that his younger brother, Hector Rivadeneira-Chasing, was arrested on the open seas and prosecuted in the Middle District of Florida following his arrest as a crewmember aboard a go-fast vessel involved in the transportation of cocaine. *See United States v. Hector Rivadeneira-Chasing*, Case No. 8:14-CR-00197-T-24MAP.  Following his brother's conviction, Hector got word to Mr. Rivadeneira-Chasing that if he could somehow assist him through third-party cooperation, the cooperation could help him reduce his sentence.  Out of a desire to assist his brother and in combination with his own financial struggles, Mr. Rivadeneira-Chasing readily

agreed to participate in the transportation of a load of cocaine from Colombia to Central America.

Specifically, Mr. Rivadeneira-Chasing was approached by the same individuals who had hired his brother and offered a chance to participate in a similar drug smuggling operation.   Mr. Rivadeneira-Chasing was offered $15,000 to assist in transporting a load of cocaine from Colombia to Central America along with two other crewmembers.   Mr. Rivadeneira-Chasing willfully agreed to participate, seeing the opportunity as a means to both financially support his family and to additionally gather information which could be used to help his brother reduce his federal sentence.

In May of 2015, Mr. Rivadeneira-Chasing boarded an open-hull Panga vessel loaded with cocaine in exchange for $5,000.00 up front and the promise of another $10,000.00 upon completion of the trip.  Upon boarding the vessel, Mr. Rivadeneira-Chasing learned that Manuel Santo Cuero Vallecilla and Jose Bertabi Reina Estacio were also hired by the same large Colombian drug trafficking organization to perform the single task of transporting a load of cocaine from point A to point B by way of an open-hull Panga vessel.  Prior to their departure, all three crewmembers were provided GPS coordinates to follow.  These GPS coordinates provided the crew with the directions to follow and where to stop for refueling during the trip.  During the transport, all three

crewmembers, including Mr. Rivadeneira-Chasing, took turns piloting the vessel.  None of the three crewmembers had any proprietary interest in the cocaine and none of them held any role of authority over the other two crewmembers.

On May 7, 2015, after departing from Colombia, the *USS Kauffman* detected the Panga at 156 nautical miles south of the Costa Rica / Panama boarder. PSR ¶12.  In response, a helicopter was launched to investigate the vessel. *Id.*  Upon spotting the helicopter, the crew attempted to flee and, in the process, tossed the bales of cocaine into the ocean. *Id.*  Ultimately, the vessel was stopped and boarded by the United States Coast Guard. *Id.*  At the time the vessel was stopped, Mr. Rivadeneira-Chasing was piloting the vessel and thus identified by the Coast Guard as the Captain or Master of the vessel. *Id.*  In truth in fact, there was no true Captain or Master of the vessel and all three of the crewmembers shared in piloting and navigating the vessel during the transportation of the cocaine.  While less than 150 KG of cocaine was ultimately recovered by the Coast Guard, it is not disputed by Mr. Rivadeneira-Chasing that more than 150 KG, but less than 450 KG, were transported during the smuggling operation. PSR ¶15.

The crewmembers were brought to the Middle District of Florida and, on June 3, 2015, they were all three charged by Indictment with a Conspiracy to

Possess With the Intent to Distribute 5 Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States. PSR ¶¶1 - 3. Mr. Rivadeneira-Chasing immediately began to cooperate with the Government, and on July 14, 2015, pursuant to a written plea agreement, he pleaded guilty. PSR ¶5.   On July 31, 2015, this Court accepted Mr. Rivadeneira-Chasing's guilty plea and adjudicated him guilty. PSR ¶6.   The sentencing hearing in this cause is set for Tuesday, October 6, 2015, at 10:00 a.m. *Id*.

## GUIDELINE CALCULATIONS

Because Mr. Rivadeneira-Chasing was involved in a cocaine trafficking conspiracy which involved at least 150 KG and less than 450 KG, his base offense level, pursuant to U.S.S.G. §2D1.1, is calculated in the Presentence Report to be a level 36. PSR ¶20.   Pursuant to U.S.S.G. §2D1.1(b)(3), Mr. Rivadeneria-Chasing's base offense level is enhanced 2 levels, because while he may not have been the official Captain or Master of the vessel, he did pilot and navigate the vessel at times during the transportation operation. PSR ¶21. As a result of his qualification for the "safety value" provision, Mr. Rivadeneira-Chasing's base offense level is reduced by 2 levels, resulting in an adjusted offense level of 36. PSR ¶¶22, 26.   With a 3-level reduction for "acceptance of responsibility," it is suggested that the total offense level is 33.

6

PSR ¶¶28-30.

Mr. Rivadeneira-Chasing has no prior arrests, convictions, or contacts with law enforcement and, as such, is a criminal history category I offender. PSR¶¶32 - 36.  With a total offense level of 33 and a criminal history category I, it is suggested that Mr. Rivadeneira-Chasing's advisory guideline imprisonment range is 135 - 168 months. (11 years, 3 months - 14 years). PSR ¶74.

In the Presentence Investigation Report, Mr. Rivadeneira-Chasing is not given any reduction for his role in the offense. PSR ¶24.  He objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding reduction in his base offense level, pursuant to U.S.S.G. §2D1.1(a)(5). *See* PSR Addendum.

## MINOR ROLE GUIDELINE OBJECTION

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction.  Specifically, §3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in any criminal activity."   The determination whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *See* U.S.S.G. §3B1.2 App. N. 3(C).  The Application notes provide guidance on distinguishing between a "minimal" and a "minor"

participant.   Specifically   the   application   notes   provide   that   a   minimal participant is:

> [A person] who plays a minimal role in concerted activity.  It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.  Under this provision, the defendant's lack of knowledge and understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.  It is intended that this downward adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal." Additionally, in contrast to the Commission's observation that a "minimal participant" reduction should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant. In fact, the Sentencing Commission has recently expressed its opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended. *See* **Attachment A**, United States Sentencing Commission Amendments to the Sentencing Guidelines, Mitigating Role Amendment (April 30, 2015).

In the present case, Mr. Rivadeneira-Chasing does not qualify for a

8

minimal role reduction but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty.  He is less culpable than the sellers of the cocaine, the manufacturers of the cocaine, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, and the drug dealers who will ultimately distribute the cocaine.  He is equally culpable with his two charged co-conspirators and crewmembers of the vessel.

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1.  Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels."  Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the Court shall additionally reduce that base offense level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

Over the past 13 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under applying or misapplying

the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense reductions.   Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640.   As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30.   The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of level 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role).  *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*

> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role adjustment.

U.S.S.G. Appx. C., Amend 640 (*emphasis added*).

After conducting a recent, in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission, despite this 2002 amendment. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* **Attachment A**, Reasons for Amendment, p. 45.

Based on this study's findings, the Commission's clarifying amendment to §3B1.2 was created in hopes of fostering a greater application of the

mitigating role reduction for defendants who preform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* It is the intent of the Commission by way of the Amendment to address the Commission's observation that "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id*. This clarifying amendment to the Mitigating Role provisions is expected to take effect on November 1, 2015. *Id*.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines is designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id.* Specifically, the Commission's newly created factors direct a sentencing court to consider:

(i)     The degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    The degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    The nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

*Id.* at p. 48.

Additionally and of great significance to the present case, the amendment further provides that:

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In the present case, the Commissions' clarifying amendment makes it abundantly clear that Mr. Rivadeneira-Chasing should receive a 2-level minor

13

role reduction and by consequence a reduction in his base offense level pursuant to §2D1.1(a)(5).  Factually Mr. Rivadeneira-Chasing and his indicted co-defendants were all hired by a Colombian drug trafficking organization to act as couriers by transporting cocaine from Colombia to Central America while on-board an open-hull Panga vessel.   All three were to receive financial compensation for transporting the drugs and none of them had any ownership or proprietary interest in the drugs.   To put it simply, they were being paid to perform the limited tasks of transportation of the drugs from one country to another by way of the open sea.

Mr. Rivadeneria-Chasing's role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation or even the end distributor of the cocaine; he was simply being paid along with two other crewmembers to perform the task of piloting and transporting a vessel containing cocaine from the sellers to the buyers of the cocaine.  He is, in fact, the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e.*, drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1 as well as in the proposed amendment to U.S.S.G. §3B1.2.   It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organization are the specific type

of offender the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that the large drug trafficking organization is involved in distribution of cocaine amounts larger than the amount of cocaine Mr. Rivadeneira-Chasing and his co-defendants were apprehended with does not in any way preclude Mr. Rivadeneira-Chasing from being eligible for a mitigating role reduction.   As noted in the Commission's clarifying amendment at Application Note 3 to USSG §3B1.2:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines.  For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines."

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, it is clear that each and every factor would support Mr. Rivadeneira-Chasing receiving a mitigating role reduction.  As a simple courier or transporter of drugs, Mr. Rivadeneira-Chasing:

> (i)     Had little to no degree of understanding of the scope and structure of the criminal activity and was simply instructed to transport the cocaine from point A to point B;

(ii)    He had no role in planning or organizing the criminal activity, including no role in even organizing or planning the transportation operation;

(iii)   He had no decision-making authority nor did he have any influence regarding the exercise of decision-making authority.  He was simply given coordinate destinations and he simply followed the directions of others on where he was to transport the drugs;

(iv)    The nature and extent of his activity and participation was limited to transporting packages of cocaine from Columbia to Central America and he had little to no responsibility or discretion in preforming these limited transportation functions;

(v)     The only benefit Mr. Rivadeneira-Chasing was to receive for his transportation function of a single load of cocaine was $15,000 which is especially minimal in light of the street value of the drugs he was transporting; and

(vi)    He had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, transportation of drugs).

As noted by the Sentencing Commission, the fact that Mr. Rivadeneira-Chasing may have been "integral" to the larger drug trafficking organization by facilitating the transportation of the drugs from Colombia to Central America does not preclude him from receiving a minor role reduction.  As such, Mr. Rivadeneira-Chasing should receive a 2-level minor role reduction and a corresponding 3-level U.S.S.G. 2D1.1(a)(5) adjustment in his base offense level.

With these two corrections, Mr. Rivadeneira-Chasing's properly-calculated total offense level is 28.  With a total offense level of 28 and a criminal history category I, Mr. Rivadeneira-Chasing's advisory guideline imprisonment range is 78 - 97 months.[1]

## REQUEST FOR A REASONABLE SENTENCE

In light of the mitigating history and characteristics of Mr. Rivadeneira-Chasing as well as the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that a sentence of 60 months to be followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. §3553(a).

**A.    The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Rivadeneira-Chasing [18 U.S.C. §3553(a)(1)]**

The history and characteristics of Mr. Rivadeneira-Chasing, as well as the facts and circumstances of his case, would justify a downward variance. Mr. Rivadeneira-Chasing is a 33-year-old, non-violent impoverished Ecuadorian nation who is the primary financial supporter for 7 minor children and subject

---

[1]It is anticipated that the Government will be filing a "substantial assistance" motion which will both eliminate the 10-year minimum mandatory penalty and authorize this Court to depart downward in Mr. Rivadeneira-Chasing's advisory guideline imprisonment range. A 2-level downward departure pursuant to U.S.S.G. §5K1.1 would result in an advisory range of 63 - 78 months.

to child support payments for one other child.  As a child, he was raised in a home with 9 siblings and his father passed away when he was only 9 years old. Following his father's death, he and his family become homeless for a period of time and, ultimately, his mother struggled to financially support the family through meager employment washing clothes.  At the age of 12 and while in the third grade, Mr. Rivadeneira-Chasing was forced to drop out of school to seek employment.  He has worked as a fisherman since he was 12 years old which, at its peak, produced a monthly income of only $350.00 a month.  With this meager income, Mr. Rivadeneira-Chasing has struggled to support 7 minor children and meet his child support obligations to one other child.

He is a non-violent individual who has no prior criminal history or contacts with law enforcement; he became involved in the present non-violent activity as a means to supplement his meager fisherman's income and to also hopefully gather information which could be provided to law enforcement as a means of reducing his brother's sentence.  In exchange for the promise of $15,000 - which is more than three times greater than the amount of money he could make in a year as a fisherman - Mr. Rivadeneira-Chasing agreed to help pilot and navigate an open-hull Panga vessel loaded with more than 150 KG but less than 450 KG of cocaine from Colombia to Central America.  As noted above, his role in this large criminal drug trafficking conspiracy was minor in

comparison to other participants in the larger drug trafficking operation.

While Mr. Rivadeneira-Chasings' offense is non-violent in nature, it cannot be disputed that he was involved with a large quantity of cocaine which would support the imposition of a significant term of incarceration. However, a sentence greater than 60 months imprisonment to be followed by a 5-year term of supervised release would be "greater than necessary" to address the seriousness of Mr. Rivadeneira-Chasing's criminal behavior, especially in light of his history and characteristics, his motivation for becoming involved in this unlawful activity, and his mitigating role in the offense.

**B.      To Afford Adequate Deterrence and to Protect the Public From Further Crimes by Mr. Rivadeneira-Chasing [18 U.S.C. §3553(a)(2)(B) & (C)]**

Given the significant quantity of cocaine involved in Mr. Rivadeneira-Chasing's offense, it cannot be disputed that a term of incarceration is necessary to both specifically deter Mr. Rivadeneira-Chasing and others from future similar criminal conduct. It is simply suggested that a 60-month term of federal incarceration to be followed by a 5-year term of supervised release will be equally efficient as any term of imprisonment greater than 60 months. This is true, especially in light of the fact that Mr. Rivadeneira-Chasing has never received a prior term of imprisonment and, in fact, has never previously had any contacts with law enforcement in this country or in his home country.

### C.    To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Justice Punishment for the Offense [18 U.S.C. §3553(a)(2)(A)]

Mr. Rivadeneira-Chasing is mindful that he has committed a serious crime and that he needs to be punished.  It is respectfully suggested that a total sentence of 60 months to be followed by a 5-year term of supervised release would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law."

Because Mr. Rivadeneira-Chasing has never before been sentenced to even a single day in jail, a 60-months term of imprisonment would constitute a significant penalty for Mr. Rivadeneira-Chasing, especially in light of his 7 minor children who are financially depending on him.  Additionally, such a sentence will reasonably reflect Mr. Rivadeneira-Chasings' mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish Mr. Rivadeneira-Chasing for his non-violent, although very serious criminal activities.  At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Rivadeneira-Chasing as an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment.

WHEREFORE, the Defendant, RUBEN DARIO RIVADENEIRA-CHASING, respectfully moves this Honorable Court to sustain his minor role objection, to grant the Government's "substantial assistance" motion, and based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 60 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 22nd day of September, 2015.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Adam B. Allen*
Adam B. Allen
Florida Bar No.0998184
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of September, 2015, a true

and correct copy of the foregoing was filed with the Clerk of the Court using

the CM/ECF system, which will send a notice of the electronic filing to:

AUSA James R. Zoll.

/s/ Adam B. Allen
Adam B. Allen
Assistant Federal Defender

# Attachment A



# Amendments to the
# Sentencing Guidelines

---

# April 30, 2015

This compilation contains unofficial text of amendments to the sentencing guidelines, policy statements, and commentary submitted to Congress, and is provided only for the convenience of the user.  Official text of the amendments can be found on the Commission's website at www.ussc.gov and will appear in a forthcoming edition of the Federal Register.

## TABLE OF CONTENTS

**AMENDMENT**                                                    **PAGE NO.**

**1. JOINTLY UNDERTAKEN CRIMINAL ACTIVITY.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**2. INFLATIONARY ADJUSTMENTS.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

**3. ECONOMIC CRIME.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

**4. HYDROCODONE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **35**

**5. MITIGATING ROLE..**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **45**

**6. "SINGLE SENTENCE" RULE.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **50**

**7. TECHNICAL AMENDMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **61**

The United States Sentencing Commission is an independent agency in the judicial branch of the United States Government.  The Commission promulgates sentencing guidelines and policy statements for federal sentencing courts pursuant to 28 U.S.C. § 994(a).  The Commission also periodically reviews and revises previously promulgated guidelines pursuant to 28 U.S.C. § 994(o) and generally submits guideline amendments to Congress pursuant to 28 U.S.C. § 994(p) not later than the first day of May each year.  Absent action of Congress to the contrary, submitted amendments become effective by operation of law on the date specified by the Commission (generally November 1 of the year in which the amendments are submitted to Congress).

The Commission specified an effective date of **November 1, 2015**, for the amendments listed above and included in this compilation.

5.      **MITIGATING ROLE**

**Reason for Amendment:**  *This amendment is a result of the Commission's study of §3B1.2 (Mitigating Role).  The Commission conducted a  review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony.  Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.  In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district).  For example, application of mitigating role varies along the southwest border, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of  97.2 percent in another.  Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of the 2-, 3-, and 4-level adjustments.  In economic crime cases, the study found that the adjustment was often applied in a limited fashion.  For example, the study found that courts often deny mitigating role to otherwise eligible defendants if the defendant was considered "integral" to the successful commission of the offense.*

*This amendment provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies.  Specifically, it addresses a circuit conflict and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances.  It also provides a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment.*

*Section 3B1.2 provides an adjustment of 2, 3, or 4 levels for a defendant who plays a part in committing the offense that makes him or her "substantially less culpable than the average participant."  However, there are differences among the circuits about what determining the "average participant" requires. The Seventh and Ninth Circuits have concluded that the "average participant" means only those persons who actually participated in the criminal activity at issue in the defendant's case, so that the defendant's relative culpability is determined only by reference to his or her co-participants in the case at hand.  See, e.g., United States v. Benitez, 34 F.3d 1489, 1498 (9th Cir. 1994);  United States v. Cantrell, 433 F.3d 1269, 1283 (9th Cir. 2006);  United States v. DePriest, 6 F.3d 1201, 1214 (7th Cir. 1993).  The First and Second Circuits have concluded that the "average participant" also includes "the universe of persons participating in similar crimes."  See United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004); see also United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999).  Under this latter approach, courts will ordinarily consider the defendant's culpability relative both to his co-participants and to the typical offender.*

*The amendment generally adopts the approach of the Seventh and Ninth Circuits, revising the commentary to specify that, when determining mitigating role, the defendant is to be compared with the other participants "in the criminal activity."  Focusing the court's attention on the individual defendant and the other participants is more consistent with the other provisions of Chapter Three, Part B.  See, e.g., §3B1.2 (the adjustment is based on "the defendant's role in the offense"); §3B1.2, comment. (n.3(C)) (a determination about mitigating role "is heavily dependent upon the facts of the particular case"); Ch. 3, Pt. B, intro. comment. (the determination about mitigating role "is to be made on the basis of all conduct within the scope of §1B1.3 (Relevant Conduct)").*

*Next, the amendment addresses cases in which the defendant was "integral" or "indispensable" to the commission of the offense.  Public comment suggested, and a review of case law confirmed, that in some*

*cases a defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense.  See, e.g., United States v. Skinner, 690 F.3d 772, 783-84 (6th Cir. 2012) (a "defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme"); United States v. Panaigua-Verdugo, 537 F.3d 722, 725 (7th Cir. 2008) (defendant "played an integral part in the transactions and therefore did not deserve a minor participant reduction"); United States v. Deans, 590 F.3d 907, 910 (8th Cir. 2010) ("Numerous decisions have upheld the denial of minor role adjustments to defendants who . . . play a critical role"); United States v. Carter, 971 F.2d 597, 600 (10th Cir. 1992) (because defendant was "indispensable to the completion of the criminal activity . . . to debate which one is less culpable than the others . . . is akin to the old argument over which leg of a three-legged stool is the most important leg.").  However, a finding that the defendant was essential to the offense does not alter the requirement, expressed in Note 3(A), that the court must assess the defendant's culpability relative to the average participant in the offense.  Accordingly, the amendment revises the commentary to emphasize that "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.*

*The amendment also revises two paragraphs in Note 3(A) that illustrate how mitigating role interacts with relevant conduct principles in §1B1.3.  Specifically, the illustrations provide that certain types of defendants are "not precluded from consideration for" a mitigating role adjustment.  The amendment revises these paragraphs to state that these types of defendants "may receive" a mitigating role adjustment.  The Commission determined that the double-negative tone ("not precluded") may have had the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances.*

*Finally, the amendment provides a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the adjustment.  The factors direct the court to consider the degree to which the defendant understood the scope and structure of the criminal activity, participated in planning or organizing the criminal activity, and exercised decision-making authority, as well as the acts the defendant performed and the degree to which he or she stood to benefit from the criminal activity.  The Commission was persuaded by public comment and a detailed review of cases involving low-level offenders, particularly in fraud cases, that providing a list of factors will give the courts a common framework for determining whether to apply a mitigating role adjustment (and, if so, the amount of the adjustment) and will help promote consistency.*

*The amendment further provides, as an example, that a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for a mitigating role adjustment.*

**Amendment:**

**§3B1.2.**      **Mitigating Role**

Based on the defendant's role in the offense, decrease the offense level as follows:

(a)      If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.

(b)    If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

In cases falling between (a) and (b), decrease by **3** levels.

*Commentary*

*Application Notes:*

1.    *Definition.*—For purposes of this guideline, "participant" has the meaning given that term in Application Note 1 of §3B1.1 (Aggravating Role).

2.    *Requirement of Multiple Participants.*—This guideline is not applicable unless more than one participant was involved in the offense.  *See* the Introductory Commentary to this Part (Role in the Offense).  Accordingly, an adjustment under this guideline may not apply to a defendant who is the only defendant convicted of an offense unless that offense involved other participants in addition to the defendant and the defendant otherwise qualifies for such an adjustment.

3.    *Applicability of Adjustment.*—

(A)    *Substantially Less Culpable than Average Participant.*—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in ~~the concerted~~ criminal activity ~~is not precluded from consideration for~~ may receive an adjustment under this guideline.  For example, a defendant who is convicted of a drug trafficking offense, whose ~~role~~ participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored ~~is not precluded from consideration for~~ may receive an adjustment under this guideline.

Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense ~~and~~or who had limited knowledge of the scope of the scheme ~~is not precluded from consideration for~~ may receive an adjustment under this guideline.  For example, a defendant in a health care fraud scheme, whose ~~role~~ participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount ~~is not precluded from consideration for~~ may receive an adjustment under this guideline.

(B)    *Conviction of Significantly Less Serious Offense.*—If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.  For

47

*example, if a defendant whose actual conduct involved a minimal role in the distribution of 25 grams of cocaine (an offense having a Chapter Two offense level of level 12 under §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy)) is convicted of simple possession of cocaine (an offense having a Chapter Two offense level of level 6 under §2D2.1 (Unlawful Possession; Attempt or Conspiracy)), no reduction for a mitigating role is warranted because the defendant is not substantially less culpable than a defendant whose only conduct involved the simple possession of cocaine.*

(C)     <u>*Fact-Based Determination.*</u>*—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.*

*In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:*

(i)      *the degree to which the defendant understood the scope and structure of the criminal activity;*

(ii)     *the degree to which the defendant participated in planning or organizing the criminal activity;*

(iii)    *the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;*

(iv)     *the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;*

(v)      *the degree to which the defendant stood to benefit from the criminal activity.*

*For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

*The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.*

4.       <u>*Minimal Participant.*</u>*—Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in ~~the criminal~~ concerted activity.  It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.  Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.*

5.  <u>Minor Participant.</u>— Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

6.  <u>Application of Role Adjustment in Certain Drug Cases.</u>—In a case in which the court applied §2D1.1 and the defendant's base offense level under that guideline was reduced by operation of the maximum base offense level in §2D1.1(a)(5), the court also shall apply the appropriate adjustment under this guideline.

*   *   *